UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLERY NITCHER,

       Plaintiff,                          Civil Action No. 08-11850

v.                                    HON.  GERALD E. ROSEN
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ellery Nitcher brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion be DENIED and Plaintiff's Motion GRANTED, remanding the case for rehearing at the administrative level.

## PROCEDURAL HISTORY

On July 20, 2005, Plaintiff filed an application for DIB, alleging disability as of April 1, 2005 (Tr.  52-54).  After the initial denial of his claim, Plaintiff filed a request for an administrative hearing, held on November 16, 2007 in Phoenix, Arizona before Administrative Law Judge ("ALJ") Ronald Robins (Tr. 266). Plaintiff, represented by attorney Donald W. Busto, testified by teleconference(Tr. 268-278). Vocational Expert ("VE") Mark Kelman also testified (Tr. 278-281). On January 16, 2008, the ALJ found that

although Plaintiff was unable to perform his past relevant work as a truck driver, street sweeper, or well driller,   he retained the transferable skills to perform the work of a  truck driver at the light exertional level (Tr. 19).  On April 11, 2008, the Appeals Council denied review (Tr. 3-5).  Plaintiff filed for judicial review on April 30, 2008.

## BACKGROUND FACTS

Plaintiff,  born April 30, 1947, was age 60 when the ALJ issued his decision  (Tr. 39).  His application for benefits indicates that he completed high school and one year of college, working previously as a truck driver and well digger (Tr. 72, 75).  Plaintiff alleges disability as a result of "COPD [Chronic Obstructive Pulmonary Disease], high cholesterol, low thyroid, and thick blood" (Tr. 71).

### A.      Plaintiff's Testimony

Plaintiff, a resident of Flint Michigan, testified he held a master mechanic certification, but contrary to his application statement, left school after 11th grade (Tr. 269).  Plaintiff, married and living in a single-family home,  alleged breathing difficulties, adding that he used a nebulizer and "machine" at night (Tr. 270).  He stated that his past work included driving for an asphalt paving company and a variety of truck-driving jobs (Tr. 270).

Plaintiff reported that had not worked since 2004, indicating that he stopped work to care for his severely handicapped stepson (Tr. 271).   He testified that he received approximately $500 each month from the state in return for feeding, bathing, and dressing his stepson, adding that he also received Medicaid benefits (Tr. 271).  Plaintiff reported that in addition to using an Albuterol inhaler twice a day, he currently took cholesterol, thyroid, and blood pressure medication (Tr. 272).  He denied medication side effects except for becoming "dizzy once in a while" (Tr 272).  Plaintiff estimated that he could stand or walk for five minutes before needing to rest, indicating that he could sit for longer periods  (Tr.

272-273).    Reporting that he was "not suppose[d] to lift over 10 pounds," he denied reaching, stooping, range of motion, squatting, or kneeling problems (Tr. 273).  Plaintiff indicated that his ability to stair climb was limited and bending made him dizzy (Tr. 272-273).  He reported that cold weather and airborne pollen created breathing difficulties, adding that his treating physicians encouraged him to walk for exercise (Tr. 274).

Plaintiff acknowledged that he mopped, vacuumed, and performed other household chores, adding that he became winded after taking out the trash (Tr. 274-275).  He denied yard work (Tr. 275).  Reporting that he still held a valid driver's license, Plaintiff reported that he seldom left the house or drove significant distances since he had begun caring for his stepson (Tr. 275).   He reported sleep apnea, reiterating that he used a CPAP machine (Tr. 276).  Plaintiff, formerly a two-and-a-half pack a day smoker, reported that he currently smoked five cigarettes each day (Tr. 276).  He denied alcohol use (Tr. 276).

In response to questioning by his attorney, Plaintiff reported that his physician "bled" him once a week to alleviate symptoms of "thick blood" (Tr. 277).  Plaintiff testified that he relied on a son-in-law to help him with heavy lifting (Tr. 277).

### B.    Medical Evidence

### 1.  Treating Sources

In July, 2005, Plaintiff reported to Donald Robinson, M.D. that he had been experiencing shortness of breath for approximately two months (Tr. 175).   Dr. Robinson noted that Plaintiff had been a two pack a day smoker for 40 years (Tr. 175). A CT scan performed the same month showed no malignancy, but an enlarged left hilum and evidence of asbestos exposure (Tr. 177-179).  In August, 2005, pulmonary specialist Orlando A. Filos, M.D. examined Plaintiff on behalf of Plaintiff's treating physician (Tr. 118-119).  Dr. Filos, noting Plaintiff's history of hypothyroidism,  remarked that Plaintiff complained of shortness

of breath, chest tightness, and wheezing (Tr. 118). Dr. Filos, also noting that Plaintiff's asthma was exacerbated by the fact that he continued to smoke "one to two packs of cigarettes" each day, prescribed two albuterol puffs every 24 hours (Tr. 118-119). A pulmonary function test showed no evidence of COPD (Tr. 120).

A January, 2006 CT of Plaintiff's chest showed that his condition remained stable (Tr. 117). In March, 2006, Plaintiff sought emergency treatment after experiencing shortness of breath (Tr. 153). He was given a Nitro patch and aspirin and received a prescription for a beta blocker (Tr. 153). Jagdish K. Shah M.D. diagnosed Plaintiff with "mild" COPD, advising him to quit smoking (Tr. 155). Dr. Shah found that Plaintiff was "not . . . disabled" as a result of COPD (Tr. 155). In April, 2006, cardiologist Samir A. Elian, M.D. noted the presence of "probable [coronary artery disease] with abnormal stress test for ischemia" (Tr. 132, 135, 136). Plaintiff underwent angioplasty as well as the implantation of a stent (Tr. 141). In May, June and September, 2006, Dr. Elian, noting that Plaintiff denied chest pain or shortness of breath, found his coronary artery disease "asymptomatic" (Tr. 124, 126, 128). July and October, 2006 CT scans of Plaintiff's chest showed that his condition was "stable" (Tr. 115-116).

In January, 2007, Rizwan Danish, M.D. diagnosed Plaintiff with polycythermia (Tr. 184). Plaintiff, admitting to Dr. Danish that he was a long-term smoker, indicated that he was trying to reduce his tobacco intake (Tr. 183-184). The same month, an ultrasound of the spleen showed normal results (Tr. 186). In April, 2007, Plaintiff underwent therapeutic blood drawing (phlebotomy) for the condition of polycythaemia[1] (Tr. 210, 215-216). The

---

[1] Polycythaemia is "[t]he opposite of amaemia, with too many red blood cells and an increase in the haemoglobin content of the blood." *Online Medical Dictionary*, www.mondofacto.com/facts/dictionary?query=polycythaemia&action=look+it+up.

-4-

same month, Dr. Danish noted that Plaintiff continued to cut back "on his cigarette smoking with a goal to eventually stop smoking" (Tr. 216).  March and August, 2007 CTs of the chest showed unchanged results (Tr 196-197).

### 2.  Consultive and Non-examining Sources

In September, 2005, Lynda Misra, D.O. performed a consultive examination of Plaintiff on behalf of the SSA, noting a history of COPD, hypertension, hypercholesterolemia, and hypothyroidism (Tr. 159-160).  Plaintiff exhibited appropriate insight and judgment with "immediate, recent, and remote memory" intact and a normal range of motion (Tr. 158).  Dr. Misra, finding that Plaintiff exerted his "best effort," remarked that a pulmonary function test showed "mild to moderate" COPD (Tr. 159).  The consultive physician noted Plaintiff's "extensive smoking history" (Tr. 159).

In October, 2005 a Physical Residual Function Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently;  stand, walk, or sit for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 105).  The Assessment also found that while Plaintiff could climb on an occasional basis only, he could balance, stoop, kneel, crouch, and crawl on a *frequent* basis (Tr. 106).   The Assessment found the absence of manipulative, visual, and communicative limitations, but determined that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 107-108).   The following month, a Case Analysis, finding that Plaintiff had "not had any nocturnal symptoms" of COPD, hospitalizations, or emergency room visits in the prior year, concluded that his COPD was non-severe (Tr. 103).

### C.    Vocational Expert Testimony

VE Mark Kelman classified Plaintiff's past relevant truck driving work as described as semi-skilled at the medium exertional level and well drilling work as unskilled and heavy[2] (Tr. 279). Citing the Dictionary of Occupational Titles ("DOT") Code 919.683-022, the VE opined that Plaintiff retained skills from his truck driving work transferrable to the position of street-sweeper operator at the light exertional level (Tr. 279). The VE testified further that Department of Labor publications showed the existence of semiskilled "light truck driving" jobs with 7,663 of such jobs existing in the State of Michigan as of 2007 (Tr. 280).

The ALJ, taking into account Plaintiff's age, education, and work experience, listed the following "hypothetical" limitations:

> "The individual could frequently lift 10 pounds, occasionally lift 20 pounds. Stand and or walk about six hours in an eight hour day. Sit about six hours in an eight hour day. Unlimited with regard to pushing and pulling of hand and foot controls. Occasionally climb ramps and stairs. Frequently balance, stoop, kneel, crouch, crawl. The individual needs to avoid even moderate exposure to fumes, odors, dust[,] gases, poor ventilation, et cetera. [Could] such an individual be able to perform any of the past relevant work of the claimant?"

(Tr. 281). The VE, referencing his above-stated testimony found that Plaintiff's acquired skills could be transferred to the job "light truck driver" (Tr. 281). The VE concluded his testimony by stating that if Plaintiff's allegations of breathing difficulties were fully credited, he would be unable to perform any work (Tr. 281).

### D.    The ALJ's Decision

Citing Plaintiff's medical records, ALJ Robins determined that Plaintiff experienced

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

the severe impairments of COPD, shortness of breath, secondary polysythemia, hypertension, and coronary artery disease, finding however that the conditions did not meet or medically equal the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 14). Finding the absence of manipulative, visual, or communicative limitations, the ALJ determined that Plaintiff had the following Residual Functional Capacity ("RFC"):

> "[T]o perform light work with a sit/stand option . . . sit for six hours in an eight-hour workday, stand and/or walk for six hours in an eight-hour workday, and lift and/or carry 10 pounds frequently and 20 pounds occasionally. He is able to occasionally climb and frequently balance, stoop, kneel, crouch, and crawl. He must avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, etc."

(Tr. 14-15). Citing the VE's testimony, the ALJ found that Plaintiff retained "acquired work skills" from his past relevant work as a truck driver could be transferred to the work of a truck driver at the light exertional level[3] (Tr. 18-19).

In support of his conclusion, the ALJ rejected Plaintiff's alleged degree of impairment, finding that objective medical tests showed that his conditions were "either mild or moderate at worst" (Tr. 17). He noted that in regard to coronary heart disease, Plaintiff had been "asymptomatic" since receiving a stent and had not receive steroid treatment for breathing problems (Tr. 17). The ALJ also noted that Plaintiff's daily activities and failure to quit smoking stood at odds with his disability claim (Tr. 17-18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

---

[3]The administrative opinion mis-cites the VE's testimony, stating that 663 light truck driving jobs exists in Southeast Michigan (Tr. 19). In fact, the VE testified to 7,663 jobs in the entire State of Michigan (Tr. 280).

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

-8-

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Transferrable Skills

Plaintiff argues first that the ALJ applied the wrong legal standard in determining that he possessed transferrable job skills. *Plaintiff's Brief* at 9-12 (*citing* Tr. 18, 280). Plaintiff, citing the administrative finding he had "highly marketable" acquired job skills (Tr. 18), notes that the "highly marketable" standard for individuals aged 60-64 was supplanted in 2000 by the requirement that "the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.* (*citing* 20 C.F.R. §§ 404. 1568(d)(4); 416.968(d)(4)).[4]

Defendant concedes that the "highly marketable" standard found in 20 C.F.R. § 404.1563(d) was rescinded on April 6, 2000. *Defendant's Brief* at 14 (*citing* 65 Fed. Reg. 17994-01, 2000 WL 349581).   Nonetheless, he notes that the current standard requiring "very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry," was drawn directly from the already existing language of 20 C.F.R. § 202.00(f), characterizing the rescission of the "highly marketable" standard as a clarification of, rather than departure from the regulations' original intent. *Defendant's Brief*

---

[4]    20 C.F.R. § 404.1568(d)(4) states in full  that "[i]f you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."

at 14

     While Defendant is technically correct that 65 Fed. Reg. 17994-01 "clarifies" the standard by which transferrable skills are determined for individuals aged 60 to 64, the Regulation unambiguously rejects the "highly marketable" standard employed by the ALJ.[5] Further, while Defendant contends that "there is no evidence that [the ALJ] was ignoring the . . . criteria that controlled the evaluation of transferability of skills both before and after the change in the regulations in April 2000," *Defendant's Brief* at 14, the administrative opinion is absent any indication that the ALJ applied or was even aware of the current standard set forth in 20 C.F.R. §§ 404. 1568(d)(4); 416.968(d)(4).

     I also disagree with Defendant's argument that ALJ's error  was harmless. *Defendant's Brief* at 14.  To be sure, the VE, citing DOT Code 919.683-022, testified that Plaintiff could transfer skills from his former work as a street-sweeper operator (performed at the medium exertional level) to the job of street-sweeper operator at the light exertional level, stating that the exertionally light street-sweeper position "closely tie[d] in with [Plaintiff'] past work" (Tr. 95, 279-280).  However, I cannot say that the VE's "closely ties" testimony satisfies the stringent requirement that the newer position is "so similar to your previous work that you would need to make very little, if any, vocational adjustment." Further, while Plaintiff reported that his former street-sweeping job required him to lift up to 50 pounds emptying the sweeper's hopper, the fact that the *light* street-sweeping position requires no more than 20-pound lifting suggests at least some equipment differences between

------

     [5]

     Explaining the basis for the removal, the Regulation states that the "highly marketable" standard  "inadvertently g[ave] the mistaken impression" the disability determination was impermissibly based on "whether an individual would be hired if he or she applied for work." 65 Fed. Reg. 17996-7 (*citing* Social Security Act §§ 223(d)(2),1614(a)(3)(B)).

-10-

Plaintiff's former job and the proposed light position.   While the VE provided current numbers on the number of light street-sweeping positions in the regional and national economy, he did not comment on how the light position would differ from Plaintiff's former work.

More significantly, the record strongly suggests that the VE misunderstood the nature of Plaintiff former position.  Although Plaintiff's application states that he worked previously as a "street sweeper,"  he indicates that the position required to lift 50 pounds while *emptying a hopper* (Tr. 95).  The hopper-emptying requirement contradicts the description of the street sweeper-operator position cited by the VE, which states that  operators "dump refuse in piles at curb for removal" *by pulling a lever*.  DOT Code 919.683-022.   In contrast, Plaintiff's description of his former sweeping work is consistent with DOT Title "Sweeper-Cleaner, Industrial" Code 389.683-010 (at the medium exertional level), which entails driving an industrial vacuum and *emptying "a trash collecting box or bag* at end of each shift." (Emphasis added). A "hopper" would be a "collecting box or bag."   Because the ALJ's failure to apply the correct standard is coupled by evidence showing  Plaintiff's former "street sweeper" job might entail substantially different requirements from the position cited by the VE, a remand for rehearing is necessary.

### B.  Residual Functional Capacity

Plaintiff notes further that while the RFC found in the administrative opinion contained a sit/stand option, this limitation was omitted from the ALJ's hypothetical question to the VE. *Plaintiff's Brief* at 12-13.  Citing *Varley v. Commissioner of Social Security,* 820 F. 2d 777, 779 (6th Cir. 1987), he contends that the ALJ's failure to reconcile the hypothetical limitations with the ultimate RFC invalidates the vocational testimony that he could perform light truck driving work. *Plaintiff's Brief* at 13.

Pursuant to *Varley,* 820 F.2d at 779 (internal citations omitted), "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." The omission of the limitation of a sit/stand option from the hypothetical question coupled with its inclusion in the RFC would generally invalidate the VE's Step Five job findings. *Id.* In this case, the ALJ's non-disability conclusion was based on his finding that Plaintiff is capable of performing light truck-driving work (Tr. 19).[6] The possibility that Plaintiff requires a sit/stand option, as stated in the administrative opinion, would clearly preclude him from performing a job requiring him to remain in a sitting position for extended periods and the use of foot pedals (Tr. 280). Therefore, the inconsistencies between the RFC and hypothetical question present independent grounds for remand.[7]

In closing, I note that errors discussed above, while critical, do not suggest that Plaintiff is automatically entitled to benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). Indeed, Plaintiff does not request a remand for benefits, but rather "a second *de novo* hearing before an Administrative Law Judge." *Plaintiff's Brief* at 13-14. Accordingly, I recommend that this case be remanded for rehearing consistent with Sections **A-B**. of this analysis.

---

[6] The VE and the ALJ placed the "street sweeper" positions under the general category of truck driving. *See* Tr. 279.

[7] The Defendant argues that the inclusion of a sit/stand option in the RFC amounts to a "simple scrivener's error." *Defendant's Brief* at 15. Maybe yes, maybe no, but given the other deficiencies in the administrative determination, discussed above, and out of an abundance of caution, the ALJ on remand should be given the opportunity to clarify this point.

## IV.  CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding the case for rehearing at the administrative level.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN

-13-

UNITED STATES MAGISTRATE JUDGE

Dated:  May 13, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 13, 2009.

s/Susan Jefferson
Case Manager